IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) JAMES LEGROS, SR. and<br>(2) JACQUELINE MILIOTO, as next friend to D.M., a minor, as next of kin of JAMES LEGROS, JR., deceased,<br><br>　　　　　　　　　Plaintiffs,<br><br>vs.<br><br>(1) BOARD OF COUNTY COMMISSIONERS FOR CHOCTAW COUNTY; *et al..*<br><br>　　Defendants. | Case No. 18-CV-261-RAW |

### PLAINTIFF JACQUELINE MILIOTO'S RESPONSE TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER

Plaintiff, Jacqueline Milioto, as next friend to D.M., a minor, as next of kin of James Legros, Jr., deceased, responds in opposition to Defendant Board of County Commissioners for Choctaw County's Motion for Protective Order. In support of Plaintiff Milioto's response, Plaintiff states as follows:

### INTRODUCTION

1. This case pertains to the arrest, detention, and subsequent death of James Legros, Jr. after he was arrested by the Choctaw County Sheriff's Department on October 25, 2016.

2. Legros, Jr. was arrested because he appeared to be intoxicated; thereafter, he was transported to the Choctaw County Jail.

3. During Legros, Jr.'s detainment at the Choctaw County Jail, he displayed paranoid and erratic behavior.

4. Despite Legros, Jr.'s continued display of paranoia and erratic behavior for four (4) days—Choctaw County Sheriffs continued to hold him in custody without any form of medical evaluation or treatment.

5. On October 29, 2016, James Legros, Jr. was found hanging from a blanket in his cell, unresponsive, and was pronounced dead shortly thereafter.

6. Legros, Jr. had several unexplained abrasions and contusions on his head and body. It is unclear how often, if ever, Choctaw County Sheriffs checked in on Legros, Jr.—as is required by Oklahoma Jail Standards when dealing with an individual who appears "to have a significant medical or psychiatric problem, or who may be a suicide risk…" See Okla. Admin. Code 310:670-5-8.

7. In an effort to discover the circumstances surrounding Legros, Jr.'s untimely death, and any steps or measures taken by Choctaw County Sheriff's Department to ensure Legros, Jr.'s safety, Plaintiff Milioto

sought to obtain the records that are the subject of this Motion for Protective Order.

8. Plaintiff Milioto seeks the release of any video and audio recordings or photographs made or taken within the Choctaw County Jail while James Legros, Jr. was in custody, as well as the Policies and Procedures of the Choctaw County Jail or Choctaw County Sheriff's Office as they relate to the operation of the jail.

9. Plaintiff agreed to a protective order regarding:

   a. performance appraisals or disciplinary records related to non-parties,
   b. social security numbers and dates of birth of any persons,
   c. unlisted home addresses or unlisted home phone numbers,
   d. educational records of any persons to the extent such records are covered by 20 U.S.C. § 1232g(4),
   e. personnel files of jail or sheriff's office employees,
   f. and personal contact information of present and former employees, officers, or agents of the Defendants.

10. Plaintiff does not agree to a protective order regarding: jail policies, photographs, and surveillance video.

11. On February 20, 2018 the State District Court Judge entered a Court Minute for "Counsel to Submit Order."

12. Plaintiff believes the State District Court Judge was requesting an Order pertaining another cause-of-action involving the same counsel and Defendant. The other cause-of-action is very similar—on the

3

account, *both claims* allege abuse by Defendant's employees and jail surveillance footage. Counsel discussed the other cause of action at the same hearing where this Protective Order was discussed, and there was an agreed order to be submitted in the other cause of action.

13. Defendant's acknowledged to Plaintiff's counsel that the State District Court Judge may have been confused by Defendant's attempt to submit Defendant's version of the Protective Order, without explanation that Plaintiff still objected to it.

14. After the State Court filed Defendant's Protective Order, Plaintiff filed a 'Motion to Clarify' whether the Protective Order was filed in confusion of similar litigation.

15. Thereafter, Defendant provided the requested video, photographs, and policies to Plaintiff in agreement that the provided documents would be protected until the State Court ruled on the Motion to Clarify.

16. On August 1, 2018, Plaintiff removed this cause-of-action to Federal Court.

17. Subsequently, both parties agreed this Court would be the proper location to litigate Defendant's Protective Order.

18. There is no dispute that the requested videos and documents are discoverable in this litigation, inasmuch as they are relevant and

reasonably calculated to lead to admissible evidence. 12 O.S. § 3226(B)(1).

19. The issue is whether, under Oklahoma law, citizens are vested with the inherent right to know and be fully informed about their government, and whether government encounters with its citizens should be transparent and available to the public—rather than cloaked in secrecy.

I. **DEFENDANT FAILS TO MEET ITS BURDEN TO SHOW RECORDS ARE NOT SUBJECT TO DISCLOSURE UNDER THE OKLAHOMA OPEN RECORDS ACT.**

The Oklahoma Open Records Act ("O.R.A.") governs the public disclosure of records which are held by governmental entities in Oklahoma. It is well established public policy of the State of Oklahoma that the people of Oklahoma are vested with the **inherent right** to know and be fully informed about their government. *See Oklahoma Ass'n of Broadcasters, Inc.* v. *City of Norman, Norman Police Department*, 2016 OK 119, 390 P.3d 689 (Okla. 2016). The Oklahoma Supreme Court acknowledged the purpose of the O.R.A. is "to ensure and facilitate the public's right of access to and review of government records so they may efficiently and intelligently exercise their inherent political power." 51 O.S. § 24A.2; *Oklahoma Ass'n of Broadcasters, Inc.*, 2016 OK 119, ¶ 15. Furthermore, "[b]ecause of the **strong public policy** allowing public

5

access to governmental records, we must construe the Act's provisions to allow access unless an exception **clearly applies**, and the burden is on the public agency seeking to deny access to show a record should not be made available." *Id.* (citing *Citizens Against Taxpayer Abuse, Inc. v. City of Oklahoma City*, 2003 OK 65, ¶ 12, 73 P.3d 871, 875) (emphasis added).

Defendant fails to name an exception and clearly articulate why an exception applies. After a long recitation of procedural history, Defendant dedicates only one (1) paragraph toward meeting its burden of showing that the requested records are not subject to public disclosure. (*See* Defendants Motion for Protective Order at ¶ 18.) Moreover, Defendant fails to cite a single case or statute. Rather, Defendant baldly purports that the surveillance footage and records should be placed under protective order because the they "pose a security risk to the safety of the inmates, employees and citizens of Choctaw County."

Defendant's assertions are unfounded and unsupported by law. Defendant fails to even identify the statutory exception applicable to their Protection Order. Furthermore, Defendant fails to clearly articulate how such an exception would apply—or even explain how the Protective Order is necessary for the safety the "inmates, employees[,] and **citizens of Choctaw County**." *Id.* (emphasis added.) Defendant seems to base their argument entirely upon the possibility that the surveillance

6

footage and records might end up on the internet—and therefore, Defendant claims, this is somehow dangerous to the public. (*See* Defendant's Motion for Protective Order, ¶ 18). But, Defendant fails to connect the two claims.

Defendant's failure is likely because such claims are unfounded and contrary to common jail/prison practices—and their own practice. (*See* Ex. 1, photos of various county jails and correctional facilities in Oklahoma) (*See* Ex. 2, photos pulled from a news video shot inside Choctaw County Jail.)

## II. VARIOUS COUNTY JAILS, INCLUDING CHOCTAW COUNTY, HAVE PREVIOUSLY RELEASED SIMILAR RECORDS WITH NO "SECURITY RISK" POSED

Defendant's sole rational for seeking a protective order on Plaintiff's requested records is because "video, recordings and photographs taken within the jail pose a security risk to the safety of the inmates, employees and citizens of Choctaw County." (See Defendant's Motion for Protective Order, ¶ 18).

However, this claim is wholly unfounded, as no "security risk" has prevented a **multitude** of other Oklahoma county jails from releasing video, photographs, and even allowing news crews to come within the jails or correctional facilities to film video footage that is to be broadcast on the news. (**Ex. 1**). Attached to this response are photographs from the

7

Oklahoma State Penitentiary in McAlister, Oklahoma; Oklahoma County Jail; Cherokee County Jail, Tulsa County Jail; Garvin County Jail; and the Joseph Harp Correctional Center in Lexington, Oklahoma. (See **Ex. 1**). These results are from a cursory search on YouTube and Google—meaning it is nothing novel to have jails release materials that are substantially similar to what Plaintiff Milioto is requesting.

To demonstrate the extent to which previous facilities have released this information voluntarily, without the worry of a "security risk", the Oklahoma State Penitentiary allowed a one (1) hour documentary to be made. The State Penitentiary allowed the camera crew and others access to the interior aspects of the penitentiary. This documentary was made as recently as 2016. The documentary has since been posed on the internet.[1] Additionally, a NewsOK article provides a panoramic view of a variety of rooms within the penitentiary.[2] Anyone with internet access may view Death Row, the Rotunda, or even the Death Chamber. This article also posts a plethora of photographs from inside the facility. (See **Ex. 1**).

The Oklahoma County Jail allowed KOCO News 5 Channel in Oklahoma City to tour its facility after the Oklahoma County Jail earned

---

[1] https://www.youtube.com/watch?v=YXE73dJ4DeA
[2] http://newsok.com/article/3630640

a national accreditation.[3] The referenced video shows the communication center of the county jail, with all its security camera locations and angles, as well as the cell block, common area, and individual cells. The Oklahoma County Jail likely faces far more "security risks" than the Choctaw County Jail—yet, Oklahoma County Jail did not deny a news crew access to its facilities.

The Garvin County Jail released internal security footage of an inmate escaping in April 2017, after which the video footage was posted on the internet and broadcast on the evening news.[4] This video not only shows the interior of the jail, but it could essentially be used as a "how-to" guide for others contemplating the release of an inmate by force.

The Defendants state there is a concern posed by the release of the requested records. However, this concern did not prevent the Garvin County Jail from releasing such video footage, despite the fact that an inmate had already escaped from that facility. As part of different news stories and exposés, access to video footage or photographs of the Tulsa County Jail have been voluntarily permitted, as well. (See **Ex. 1**).

The jail surveillance footage showing the beating of Daniel Bosh by detention officers at the Cherokee County Detention Center is readily

---

[3] https://www.youtube.com/watch?v=SAm2JG8L9-M&feature=youtu.be
[4] http://kfor.com/2017/04/03/police-release-video-from-garvin-county-inmates-escape/

9

available for viewing online.[5] This video, and the beating it depicted, formed the basis of *Bosh v. Cherokee Cty. Bldg. Auth.*, wherein the Oklahoma Supreme Court recognized a cause of action under the Oklahoma Constitution for excessive force. 2013 OK 9, ¶ 3, 305 P.3d 994, 996, *as corrected* (June 28, 2013)("Nevertheless, video surveillance of the events captured images of one of the jailers, the defendant Gordon Chronister, Jr. (Chronister), approaching the detainee and grabbing him behind his back.").

Finally, **and most damaging to Defendant's position**, Defendant itself voluntarily released video footage of the inside of its facilities, including but not limited to the communications center, surveillance system, Sheriff Park's office, and holding cells.[6] (**Ex. 2**). The story involved the Oklahoma Department of Correction's cancelling of its contract with Choctaw County Jail, and how the loss of funding would affect the jail. There, Defendant voluntarily allowed extensive access to the jail. This video was release in Spring of 2017, just months after Legros, Jr. hung himself in the same jail.

---

[5] https://www.liveleak.com/view?i=6e9_1323980809
[6] http://www.kxii.com/content/news/State-inmates-to-be-removed-from-10-county-jails-including-the-Choctaw-County-Jail-415821733.html

Defendant is speaking from both sides of its mouth: When the footage appears favorable to Defendant (i.e., releasing video to secure funding after a lost D.O.C. contract), then Defendant claims no "security risk." However, when a person dies in its jail, Defendant feigns a "security risk" to prevent open citizen access to the very jail, it so willing showed footage of just months later. This is not how transparent government works. *See Oklahoma Ass'n of Broadcasters, Inc.*, 2016 OK 119.

When there is so much evidence of county jails—including Choctaw County which **voluntarily allowed** the news media to post photographs and videos to the internet—Defendant's arguments for a protective order does not hold water. There are no "security risks" posed by the release of the requested records, nor is there any valid reason to require such disclosure to be subject to a protective order.

The law requires Defendant's Protective Order identify an exception and show how the exception clearly applies. Defendants failed to meet their burden. The bald claims that the video and documents would reach the internet and somehow pose a risk to others are not only unsupported, but also contrary common practice throughout Oklahoma.

## CONCLUSION

Plaintiff made these requests for records in an effort to discover the truth of the circumstances surrounding James Legros, Jr.'s death, what was done to prevent it, and what should have been done. Along with Plaintiff, the public has an interest in and a right to the continued and good faith transparency of its government. The refusal to release these records would do nothing but undercut the relationship between law enforcement and the citizens they protect.

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully requests the Court to deny Defendant Board of County Commissioners for Choctaw County's Motion for Protective Order, except for those records Plaintiffs' counsel has already agreed to being produced under Protective Order.

Respectfully submitted,
LAIRD, HAMMONS, LAIRD, PLLC

*s/ Jason Hicks*
Chris Hammons, OBA # 20233
Jason M. Hicks, OBA # 22176
1332 S.W. 89th Street
Oklahoma City, OK 73159
Telephone: (405) 703-4567
Facsimile: (405) 703-4061
E-mail: chris@lhllaw.com
ATTORNEYS FOR PLAINTIFFS

<u>CERTIFICATE OF MAILING</u>

I hereby certify that on January 15, 2019, I electronically transmitted the foregoing document to the Clerk of Court using the ECF system for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Stephen L. Geries, OBA #19101
COLLINS, ZORN & WAGNER, P.C.
428 N.E. 50th Street, Second Floor
Oklahoma City, OK 73105
Telephone: (405) 524-2070
Facsimile: (405) 524-2078
*Attorney For Defendants Board of County Commissioners for Choctaw County, Zach Dillishaw, Stewart Stanfield, Jeffery Epley and Terry Park, in their individual capacity.*

Jessica L. Dark, OBA No. 31236
Robert S. Lafferrandre, OBA No. 11897
Randall J. Wood, OBA 10531
PIERCE COUCH HENDRICKSON BAYSINGER & GREEN, LLP
1109 North Francis Ave.
Oklahoma City, OK 73106
Phone: 405-235-1611
Fax: 405-235-2904
Email: jdark@piercecouch.com
*Attorneys for Defendants Schonna Smith and Debora Clay*

James L. Gibbs, II, OBA No. 15689
Goolsby, Proctor, Heefner & Gibbs, P.C.
701 N. Broadway Ave, Suite 400
Oklahoma City, OK 73102
Phone: 405 524-2400
Fax: 405-525-6004
Email: jgibbs@gphglaw.com
*Attorney for Defendant Edna Casey*

*s/ Jason Hicks*