**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **(1) JAMES LEGROS, SR.** and <br> **(2) JACQUELINE MILIOTO,** as next friend to <br> D.M., a minor, as next of kin to JAMES LEGROS, JR, deceased, <br> Plaintiffs, <br><br> vs. <br><br> **(1) BOARD OF COUNTY COMMISSIONERS FOR CHOCTAW COUNTY; et al.,** <br><br> Defendants. | Case No. 18-CV-261-RAW |

**PLAINTIFFS' MOTION TO COMPEL DISCOVERY ANSWERS FROM DEFENDANT**

Plaintiffs move for an order compelling discovery answers from Defendant Board of County Commissioners for Choctaw County ("BOCC"). In support of this motion, Plaintiffs state as follows:

**INTRODUCTION**

This is a jail death case resulting from a deprivation of medical care. The deceased, James Legros, Jr., ("Legros") was arrested by Choctaw County Sheriff's deputies on October 25, 2016. When Legros was arrested, he exhibited numerous signs of drug toxicity/overdose, which necessitated immediate medical attention. Despite conceding that Legros exhibited obvious signs of drug overdose and mental instability that required medical attention, Choctaw County jailers detained Legros for four (4) days without medical attention. According to jailers, Legros was only permitted to leave his cell one (1)

1

time for a total forty (40) minutes to take a shower. During the remaining one hundred (100) hours of Legros' detention, Legros was locked in a single holding cell, known by jailers as the "South Holding Cell." After four (4) days, Legros hanged himself. After jailers discovered Legros hanging, they did not cut him down nor perform any lifesaving measures despite having no idea how long Legros had been hanging. As a result, Defendants cost Legros his last chance at survival.

Legros had several unexplained abrasions and contusions on his head and body and it is unclear how often, if ever, Choctaw County Sheriffs checked in on Legros, Jr., as is required by Oklahoma Jail Standards when dealing with an individual who appears "to have a significant medical or psychiatric problem, or who may be a suicide risk…" See Okla. Admin. Code 310:670-5-8. Thus, the frequency and adequacy of sight/welfare checks by jailers during Legros' detention is a significant issue in this case. Moreover, when and how the jailers responded when they found Legros hanging, along with which jailers were present at various points after finding Legros hanging is a significant issue is this case.

The Choctaw County Jail has surveillance cameras throughout the facility, including a camera immediately outside the "South Holding Cell." This motion seeks to compel production of video footage relevant to Legros' detention and death.

## FACTUAL AND PROCEDURAL HISTORY

1. On September 18, 2017, Plaintiff served Discovery Requests, including Requests for Production, on Defendant BOCC. (Exhibit 1, Return of Service).

2. Request for Production No. 10 requested production of "*any and all video and/or audio footage of Plaintiff or related to all allegations in Plaintiff's Petition between October 25, 2016 and October 30, 2016.*" (Exhibit 2, Plaintiff's Discovery Requests).

3. Defendant's Responses to Plaintiffs' Discovery Requests were due on or about November 2, 2017. On November 1, 2017, Defendant's counsel contacted Plaintiffs' counsel via email asking for an extension of two (2) weeks. Plaintiffs' counsel agreed and a new deadline for discovery responses was set for November 16, 2017. (Exhibit 3, Email Correspondence, pgs. 4-5).

4. On November 16, 2017, Defendant did not produce discovery responses, but instead suggested a protective order for a portion of the information requested by Plaintiffs, including the requested video footage. (Exhibit 3, Email Correspondence, pg. 4)

5. On November 30, 2017, having still not received any discovery responses and unable to agree to Defendant's proposed protective order, counsel for Plaintiff emailed counsel for Defendant requesting responses within ten days (10) for requests which did not seek material potentially covered by the proposed protective order. (Ex. 3, Email Correspondence, pg. 1).

6. By January 8, 2018, Defendant had not produced **any** discovery responses. As result, Plaintiffs were forced to file a Motion to Compel in Choctaw County District Court. (Exhibit 4, Motion to Compel, filed January 8, 2018).

7. The hearing on the motion was set for February 6, 2018. On January 22, 2018, approximately two (2) months after the extended deadline for responding had lapsed,

Defendant produced responses to Plaintiffs' discovery requests. (Exhibit 5, Defendant BOCC's Responses to Plaintiffs' Discovery Requests).

8. In response to Plaintiffs' Request for Production No. 10, regarding video and/or audio footage, the only (untimely) objection made by Defendants was that the requested video and/or audio should be produced subject to a protective order. Defendant went on to state "*Upon ruling by the Court, Defendant will supplement this response.*" (Ex. 5, pg. 6). Defendant made no other objections.

9. On March 6, 2018, the Honorable Michael DeBerry, District Judge of Choctaw County, entered a Protective Order, which covered the requested video.[1]

10. On April 13, 2018, more than a month after the Protective Order was filed and approximately five (5) months after the extended deadline for production of documents, Defendant produced documents, via dropbox, and made the video footage available for copying. (Exhibit 6, Emails dated April 13, 2018).

11. On April 23, 2018, Defendant returned a hard drive provided by Plaintiffs and stated that the "*videos [sic] files responsive to Plaintiffs' discovery requests are now saved on the hard drive.*" (Exhibit 7, Correspondence, April 23, 2018).

12. Defendant raised no other objections and has not otherwise supplemented its initial response to Plaintiffs' Request for Production No. 10.

---

[1] There was some dispute about whether Judge DeBerry mistakenly believed the Protective Order he signed was agreed upon, and whether he would have entered it in the absence of that belief. However, this dispute is not relevant to the instant motion.

13.     This matter was removed to Federal Court on August 10, 2018. [Doc. 2]. However, due to numerous judicial reassignments and extensions to file Answers, the parties were able to begin discovery until November 29, 2018. The Court entered a Scheduling Order on December 17, 2018. [Doc. 54].

14.     On January 21, 2019, counsel for Plaintiff emailed Defendant's counsel with concerns that not all video footage was produced and requesting whether Defendant preserved any other footage. (Exhibit 8, Email, January 21, 2019).

15.     On January 25, 2019, counsel for Defendant responded with an email stating, in pertinent part: "*I have no idea or knowledge of any relevant angles that were not produced or video that was not provided. We sent you **all** of the video of which I was aware.*" (Exhibit 9, Email, January 25, 2019) [Emphasis Added].

16.     On February 1, 2019, counsel for Plaintiffs responded, stating:

> *I believe we may be missing some or all of the video showing the hallway outside Legros's cell, specifically video showing checks on Legros by jailers. We may also be missing video showing times where Legros was removed from his cell during various periods.*
>
> *The bigger question is: Does Choctaw have any other video footage not already provided? If the answer is no, then the questions changes to whether they should have preserved it. But we don't have to get to the issue of what Choctaw should have done, until we get to look (or not look) at the remaining video that they actually did preserve.*
>
> *So, did your client preserve any additional footage?*

(Exhibit 10, Email, February 1, 2019).

17.     After Defendant produced no additional video footage, Plaintiffs scheduled Defendants' depositions on April 3, 2019, with the intention of asking about video

surveillance in the jail. As explained more thoroughly in the Joint Motion to Extend Deadlines [Doc. 67 ¶¶ 27-30], early in the first deposition of three (3) set that day, it became apparent that the Defendant did not provide a complete and/or a correct set of policies and procedures. As a result, the scheduled depositions were cancelled so that counsel for Defendant could correct/clarify the policies and procedures. As a result, the depositions were rescheduled for June 17-20, 2019.

18. During deposition, when questioned about the existence of camera footage, numerous Defendants conceded that there was a camera which showed whether a jailer looked into the "*bean hole*" in the door of the cell where Legros was detained. For example, Defendant/Jailer Zachary Dillishaw testified:

```
                       043:15 - 043:22
15    Q.  (MR. HAMMONS) How would they know if Debi Clay looked
16  into the bean hole, or not, how would they know?
17        MR. GERIES:  Object to the form.
18    A.  You can clearly see someone coming and standing
19  around here.  Even though the door is not visible, you would
20  be visible right here.
21    Q.  That would be on a camera?
22    A.  Yes.
```

(Exhibit 11, Deposition of Zachary Dillishaw, pg. 43:15-43:22; see also, pg. 44:06-44:10). When asked about footage showing what Defendant/Jailer Clay was doing at Legros' door, Defendant/Sheriff Terry Park stated "*There's a video. I mean I thought it was turned over to your agency.*" (Exhibit 12, Deposition of Terry Park, pg. 36:09-19).

19. Defendant/Deputy Stewart Stanfield took photographs of the scene and of Plaintiff. The photograph identified as Stanfield006 shows Legros still hanging in his cell.[2] (Exhibit 13, Photograph, Stanfield006. There is a camera (circled in yellow) visible immediately outside the door. (Exhibit 14, Deposition of Stewart Stanfield, pg. 27:23-28:15). This is the camera referenced by Defendant Dillishaw and Park, which would show or at least partially show jailers checking on Legros, as well as show what jailers did upon finding him hanging. Footage from this camera is highly relevant, as it is the closest camera angle available outside Legros' cell. Footage from this camera has not been produced to Plaintiffs.

20. Immediately after receiving and reviewing the deposition transcripts, counsel for Plaintiff sent an email to counsel for Defendants requesting that Defendant…

> …supplement BOCC's response to Plaintiff's Request for Production No. 10 to include video from the camera visible in Stanfield 006 and 007, along with any other camera which might show jailers checking on Legros. We also request production of all other camera footage not previously produced which may be relevant to the litigation.

(Exhibit 15, Email, June 28, 2019).[3]

21. Despite having previously represented to Plaintiff that counsel for Defendants "*sent you **all** of the video of which I was aware*" (See, ¶15, supra.), counsel responded on June 30, requesting a portable hard drive to copy additional footage, because *"[i]t is rather large."* (Exhibit 15, Email, June 30, 2019).

---

[2] Legros was left hanging in his cell for more than an hour after he was found.
[3] Plaintiffs made the same request for supplementation in the on the record in the deposition of Defendant/Deputy Stanfield. (Ex. 14).

7

22. On July 10, 2019, Defendants produced two (2) additional camera angles.[4] That same day, counsel for Plaintiffs emailed counsel for Defendants informing them that neither of the two (2) new camera angles produced nor any of the previously produced camera angles is the camera referenced in Stanfield's, Dillishaw's, and Park's deposition and shown in Stanfield006. (Exhibit 16, Email, July 10, 2019). Plaintiffs' counsel requested a Rule 37 conference regarding the missing footage.

23. On July 11, 2019, Plaintiffs' and Defendant BOCC's counsel conducted a conference regarding the missing footage. During this conversation, Defendant's counsel informed Plaintiffs' counsel, for the first time despite numerous requests, that even more video footage existed which, to date, has not been produced. Defendant's counsel further informed Plaintiffs' counsel, for the first time, that relevant video, including the video identified in Exhibits 11, 12 and 14; and visible in Ex. 13, Stanfield006, had likely been destroyed/lost. Defendant's counsel stated that the video was contained on another DVR device which was not preserved.[5] However, during this conversation on July 11, 2019 – nearly three (3) years after Legros' death and nearly two (2) years since video footage was requested in discovery – Defendants' counsel asserted that he was not sure if the footage

---

[4] Plaintiffs' counsel has not had the opportunity to fully review the additional footage produced; however, they appear to be of minimal relevance compared to the angle(s) still being withheld, specifically including the camera immediately outside Legros cell, identified in Ex. 11, 12 and 14; and visible in Ex. 13.

[5] On November 2, 2016, just three (3) days after Legros' death, Plaintiffs' counsel requested Defendants preserve evidence. Defendant/Jail Administrator Edna Casey testified under oath, in another case, that the DVR system does not write over recorded footage for ten (10) to fourteen (14) days.

8

from the camera identified in Exhibits 11, 12 and 14; and visible in Ex. 13, Stanfield006, existed because he had not checked to see if it was available.

24.     Plaintiffs file this motion to compel production of the video identified in Exhibits 11, 12 and 14; and visible in Ex. 13, Stanfield006, along with all other video footage still being withheld which is relevant to any allegation in this litigation. Because of the breadth of the allegations herein, all footage from October 25, 2016 – October 30, 2016 should be considered potentially relevant and produced.

25.     To the extent, Defendants object to production of all footage during the time period Legros was detained, Plaintiffs request the Court conduct an *en camera* review of the footage to determine its discoverability.

## ARGUMENT AND AUTHORITY

### I.  PLAINTIFF'S REQUEST FOR ALL "RELEVANT" FOOTAGE INCLUDES UNPRODUCED FOOTAGE

Rules of Civil Procedure provides that parties may obtain discovery "regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). At the discovery phase of litigation "relevancy" is broadly construed and a request for discovery should be considered relevant if there is "any possibility" that the information sought may be relevant to the claim or defense of any party. ***Owens v. Sprint/United Mgmt. Co***., 221 F.R.D. 649, 652 (D.Kan.2004) (citation omitted); ***Teichgraeber v. Memorial Union Corp. of Emporia State University***, 932 F.Supp. 1263, 1265 (D. Kan.1996)(internal citation

9

omitted)("Discovery relevance is minimal relevance,' which means it is possible and reasonably calculated that the request will lead to the discovery of admissible evidence."). A discovery request should be allowed "unless it is clear that the information sought can have no possible bearing" on the claim or defense of a party. **Owens,** *supra*. When the requested discovery appears relevant, the party opposing discovery has the burden of establishing the lack of relevance by demonstrating that the requested discovery does not come within the scope of relevance set forth in Rule 26(b)(1), or that it is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure. **Gen. Elec. Cap. Corp. v. Lear Corp.**, 215 F.R.D. 637, 640 (D.Kan.2003) (citation omitted).

Here, Plaintiffs requested all "relevant" camera footage. These cameras were mounted in locations that would capture events relevant to this case, including jailer checks on Legros, what jailers were doing when they chose not to check on Legros[6], and jailer conduct after finding Legros hanging.

In the present case, BOCC responded to discovery in a manner that would not alert Plaintiff to the existence or location of other cameras. On the contrary, Defendant's counsel told Plaintiffs on January 25, 2019, that: "*I have no idea or knowledge of any relevant angles that were not produced or video that was not provided. We sent you **all** of the video of which I was aware.*" (See, ¶15, supra.). In other words, BOCC did nothing to disturb the illusion that the "South Holding Cell" area only contained one camera inside the cell, when

---

[6] Video showing jailers, for example, staring at their cell phones or otherwise being dilatory in their duties when they should have been checking on Legros is relevant.

in fact there was a camera located immediately outside the cell. Plaintiff has requested that BOCC provide a supplemental response that is addressed to each video feed that it destroyed. BOCC has ignored those requests until the Rule 37 conference on July 11, 2019. BOCC contends that it did not destroy video, but may have allowed the recorder to tape over relevant images after preserving the video that it alone decided to preserve.[7]

## II. BOCC HAS WAIVED ITS RIGHT TO INTERPOSE ANY OBJECTIONS TO PLAINTIFF'S DISCOVERY

Pursuant to the Fed.R.Civ.P. 33(b)(2), a party must serve its answers and objections to interrogatories within 30 days after being served, and the grounds for objecting must be stated with specificity. See Fed.R.Civ.P. 33(b)(4). Any ground not stated in a timely objection is waived. *Id.*; *See also Knowlton v. Teltrust Phones, Inc.,* 189 F.3d 1177, 1181 n. 5 (10th Cir. 1999); *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992); 8A Wright, Miller & Marcus, *Federal Practice and Procedure, Civil 2d*: § 2173; *Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613 (5th Cir. 1977); *Casson Const. Co., Inc. v. Armco Steel Corp.,* 91 F.R.D. 376, 379 (D.Kan. 1980); and *Lawrence v. First Kansas Bank & Trust Co.*, 169 F.R.D. 657, 658 (D.Kan. 1996) (all finding that failure to timely respond waives the right to make objections).

BOCC did not timely serve answers and objections to Plaintiff's discovery requests even after Plaintiffs agreed to extend Defendant's response deadline. The only objection to

---

[7] The distinction advanced by the BOCC is without merit. BOCC knew the video was relevant--evidenced by its decision to preserve a small portion--and it failed to take any steps to prevent destruction of the video that it did not want. These facts alone warrant further consideration into whether BOCC has irreparably prejudiced Plaintiff's ability to present his case.

production of video raised by Defendant BOCC was that production of the videos should be subject to a Protective Order. Even this objection was untimely.[8] BOCC has waived all other objections. Accordingly, Plaintiff respectfully requests the Court enter an Order compelling BOCC to provide responses without further objection.

## RELIEF REQUESTED

Plaintiffs respectfully request this Court require Defendant's production of all relevant camera footage between October 25, 2016 and October 30, 2016, which should include all footage showing the activities of Legros and all activities of every Defendant, and everyone of Defendants' employees involved in Legros care and custody.

Given the willful delays caused by Defendants' conduct and the concealment of the existence (or non-existence) of additional video footage which predicated the need for the filing of this motion, Plaintiffs further request Defendant BOCC be ordered to pay Plaintiffs' attorney fees and reasonable expenses for the filing of this motion.

Finally, Plaintiffs request leave to re-depose Defendants regarding the video produced after depositions and video for which compelled production is requested in the instant motion. Plaintiffs request these depositions be taken at the sole cost of Defendant BOCC, and request attorney fees and costs for additional time and travel expenses incurred as a result of these additional depositions.

---

[8] Even Defendant's objection regarding a Protective Order was arguably untimely, as Defendant's extended discovery deadline was November 16, 2017, and Defendant did respond to discovery until January 22, 2018. Despite having Plaintiffs' discovery requests for two (2) months already, Defendant waited until the day of its extended deadline to raise its concerns about a protective order via email. This delay tactic has become a custom for Defendant. Further, raising an objection via email is not sufficient.

WHEREFORE, Plaintiffs respectfully requests this Court grant the relief requested herein, and any other relief in Plaintiffs' favor which the Court deems justified.

Respectfully Submitted,

*s/ Jason Hicks*
Chris Hammons, OBA #20233
Jason M. Hicks, OBA #22176
LAIRD HAMMONS LAIRD, PLLC
1332 SW 89th Street
Oklahoma City, OK 73159
Telephone: 405.703.4567
Facsimile: 405.703.4061
Email: chris@lhllaw.com
         jason@lhllaw.com
*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on July 14, 2019, I electronically transmitted the attached document to the Clerk of Court using the Electronic Case Filing System for filing. Based on the records currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to those registered participants of the ECF System.

Stephen L. Geries
COLLINS ZORN & WAGNER, P.C.
429 N.E. 50th Street, Second Floor
Oklahoma City, OK 73105
Telephone: 405.524.2070
Facsimile: 405.524.2078
Email: slg@czwlaw.com
*Attorney for Defendant*
*Board of County Commissioners*
*for Choctaw County, and Defendants Zach Dillishaw,*
*Stewart Stanfield, Jeffrey Epley and Terry Park in their individual capacity*

Robert S. Lafferrandre
Randall J. Wood
Jessica L. Dark
PIERCE COUCH HENDRICKSON
BAYSINGER & GREEN, LLP
1109 North Francis Avenue
Oklahoma City, Oklahoma 73106
Telephone: (405) 235-1611
Facsimile: (405) 235-2904
Email: jdark@piercecouch.com
*Attorneys for Defendants Smith and Clay*

James L. Gibbs, II
Goolsby, Proctor, Heefner & Gibbs, PC
701 N. Broadway Avenue, Suite 400
Oklahoma City, OK 73102-6006
Telephone: (405) 524-2400
Facsimile: (405) 525-6004
Email: jgibbs@gphglaw.com
*Attorney for Defendant, Edna Casey*

                                          *s/Jason Hicks*