IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) JAMES LEGROS, SR. and <br> (2) JACQUELINE MILIOTO, as next <br>    friend to D.M., a minor, as next of kin <br>    of JAMES LEGROS, JR., deceased, <br> <br> Plaintiffs, <br> <br> vs. <br> <br> (1) BOARD OF COUNTY <br>    COMMISSIONERS FOR <br>    CHOCTAW COUNTY; <br> (2) TERRY PARK, in his Individual <br>    and Official Capacities; <br> (3) EDNA CASEY, in her Individual <br>    and Official Capacities; <br> (4) SCHONNA SMITH, in her Individual <br>    Capacity; <br> (5) JEFFERY EPLEY, in his Individual <br>    Capacity; <br> (6) STEWART STANFIELD, in his <br>    Individual Capacity; <br> (7) ZACH DILLISHAW, in his <br>    Individual Capacity; <br> (8) DEBORA CLAY, in her Individual <br>    Capacity; <br> <br> Defendants. | Case No. 18-CIV-261-RAW |

**PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT TO SUBSTITUTE JAMERS LEGROS, SR. AS PERSONAL REPRESENTATIVE OF THE ESTATE OF JAMES LEGROS, JR. AS A PLAINTIFF**

COMES NOW PLAINTIFFS, by and through their counsel of record, respectfully request this Court to grant Plaintiffs leave to file a Second Amended Complaint to substitute James Legros, Sr. as Personal Representative of the Estate of James Legros, Jr. ("Estate"), as Plaintiff in this case:

1. This case arises out of the arrest, detention and in-custody death of James Legros, Jr. by the Choctaw County Sheriff's Department.

2. The Plaintiffs in this case are James Legros, Sr. and Jacqueline Milioto as next friend to Darien Milioto. James Legros, Sr. is the father of James Legros, Jr. D.M. is the biological child of James Legros, Jr. Collectively, they are the only known heirs of James Legros, Jr.

3. Plaintiffs originally filed this case in the District Court of Choctaw County, State of Oklahoma, alleging claims under state law only including claims under the Oklahoma Governmental Tort Claims Act ("OGTCA"). Plaintiffs filed the case as "next of kin" of James Legros, Sr. **(Ex. 1, Petition)**.

4. Plaintiffs' OGTCA notice listed "James Legros, Sr., Estate of James Legros, Jr. Jackie Milioto on behalf of D.M., a minor" as claimants. **(Ex. 2, Notice of Claim).**

5. Prior to removal to this Court, Plaintiffs filed their Amended Petition in State Court on August 1, 2018. **(Ex. 3, Amended Petition; see also Doc. 3, Exhibit 28).** In the Amended Petition, Plaintiffs alleged, for the first time, claims for deprivation of constitutional rights pursuant to 42 U.S.C. § 1983.

6. Plaintiff, James Legros, Sr., performed substantially the same function as a "personal representative." He collected his son's belongings, dealt with his son's affairs, organized his son's funeral, and did all other tasks incidental the management of his son's estate.

7. However, no official probate proceeding had been filed for James Legros, Jr.; therefore James Legros, Sr. was not, at the time of filing Plaintiffs' Petition and Amended Petition, a court-appointed "personal representative" for the Estate of James Legros, Jr.

8. Plaintiffs first became aware of their mistake when reading Defendants Casey and Smith's Settlement Conference Statement, produced to Plaintiffs on August 22, 2019, wherein the Defendants stated Plaintiffs lacked standing, citing to *Berry v. City of Muskogee*, 900 F.2d 1489, (10th Cir. 1990). Plaintiffs immediately began the process of substituting the Estate as Plaintiff, first contacting Defendants' attorney, Jessica Dark, on August 23, 2019.

9. Plaintiff James Legros, Sr. has since filed a probate proceeding requesting that James Legros, Sr. be named the personal representative of the Estate of James Legros, Jr. The hearing to appoint James Legros, Sr. as personal representative is set for September 24, 2019. **(Exhibit 4, Notice of Hearing).** However, because all heirs of James Legros, Jr. consent to the appointment of James Legros, Sr. as personal representative, Judge Welch, of the District Court of Oklahoma, has stated that he will sign the Letters of Administration at an earlier date**.**

10. Plaintiffs request leave to amend in order to substitute James Legros, Sr. as the Personal Representative of the Estate of James Legros, Jr. as a party to this case.

11. Plaintiffs did not engage in deliberate tactical maneuvering by failing to initially prosecute this action in the name of the Estate. Plaintiffs identified and Defendants have deposed all potential beneficiaries of the Estate. Further,

3

Defendants have been aware of all damages claimed, including that should have been claimed by the Estate.

12. Granting Plaintiffs' request to amend their petition will neither unfairly prejudice Defendants; nor cause in delay in this matter. The causes of action, allegations, defendants and damages sought will all stay the same. This is a purely technical change to properly name the Estate as the real party in interest.

13. The deadline to amend was December 27, 2018, unless good cause is shown.

14. All Defendants object to Plaintiffs' request to amend. The basis of Defendants' objections is that the request is "untimely and violates the statute of limitations." (**Exhibit 5, Emails from Defendants' counsel**).

15. A copy of the proposed Second Amended Complaint is attached as **Exhibit 6.**

## ARGUMENT AND AUTHORITY

As noted by the Tenth Circuit in *Berry v. City of Muskogee, Okl.*, § 1983 claims should be "a survival action, brought by the estate of the deceased victim, in accord with § 1983's express statement that the liability is 'to the party injured.'" *Berry*, 900 F.2d 1489, at 1506–07, (10th Cir. 1990), citing 42 U.S.C. § 1983. In this case, Plaintiffs' claims were initially brought by James Legros, Sr. and Jacqueline Milioto as next friend of D.M., a minor, as "next of kin." Collectively, they are Legros, Jr.'s only known heirs to James Legros, Jr.'s estate.

While Plaintiffs always intended to seek redress for damages to Legros, Jr., who, as stated in *Berry*, was the party injured, Plaintiffs seek leave from this Court to substitute "James Legros, Sr., as the Personal Representative of the Estate of James Legros, Jr." as Plaintiff so as to clearly and unequivocally comply with *Berry*. In making this request, Plaintiffs do not seek to

change any of the claims, allegations, defendants or damages. Plaintiffs seek only to change the style of the case to accurately reflect that it is brought on behalf of the Estate of James Legros, Jr.

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, after a responsive pleading has been served, the parties may amend their pleading only with leave of court. In order to safeguard the opportunity of plaintiffs to test their claims on the merits, however, Rule 15(a) provides that leave is to be freely given when justice requires. *Bauchman for Bauchman v. West High School*, 132 F.3d 542, 559 (10th Cir. 1997). A "liberal, pro-amendment ethos dominates the intent and judicial construction of Rule 15(a)." 3 James Wm. Moore et al., *Moore's Federal Practice*, § 15.14 [1] (3d ed). Although the determination of whether to grant or deny leave to amend is within the discretion of the court, *LeaseAmerica Corp.v. Eckel*, 710 F.2d 1470.73 (10th Cir. 1983), leave to amend should ordinarily be granted absent substantial reason to deny. See *Foman v. Davis*, 371 U.S. 178, 182-83 (1962).

Regarding motions to amend in order to substitute the real party in interest as a plaintiff, courts "may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3).

> The purpose of the rule is 'to prevent forfeiture of a claim when an honest mistake was made.'" *Goodman* v. *United States*, 298 F.3d 1048, 1054 (9th Cir. 2002); *see also* 6A Charles Alan Wright et al., *Federal Practice and Procedure* § 1555 (3d ed. 2017) (noting the "judicial tendency to be lenient when an honest mistake has been made in selecting the proper plaintiff"). This is consistent with our longstanding policy in favor of deciding cases on the merits. *See, e.g.*, *Dahl* v. *City of Huntington Beach*, 84 F.3d 363, 366 (9th Cir. 1996); *Russell* v. *Cunningham*, 279 F.2d 797, 804 (9th Cir. 1960).

5

*Jones v. Las Vegas Metro. Police Dep't*, 873 F.3d 1123, 1128 (9th Cir. 2017). In that regard, courts have been exceedingly lenient, finding only on the rarest of occasions factors which substantially justify a reason to deny. Some circuits require a party seeking to substitution demonstrate an "understandable" mistake in naming the incorrect party plaintiff. *Esposito v. United States*, 368 F.3d 1271, 1276 (10th Cir. 2004), citing *See, e.g., Wieburg v. GTE SW Inc.,* 272 F.3d 302, 308 (5th Cir.2001).

> In [the Tenth Circuit], however, we have never required a plaintiff seeking substitution to show that his mistake was "understandable" in addition to being "honest." **Instead, our cases focus primarily on whether the plaintiff engaged in deliberate tactical maneuvering (i.e. whether his mistake was "honest"), and on whether the defendant was prejudiced thereby.** *See, e.g., Scheufler,* 126 F.3d at 1270 (upholding district court's joinder of real party in interest because plaintiff's failure to include certain parties "was not the result of some tactic designed to prejudice defendant" and "there has been no tangible showing that defendant was prejudiced by the joinder"); *Metro. Paving,* 439 F.2d at 306 (permitting substitution of corporations for joint venture where "it was clear from the outset that the three corporations were the real parties in interest" and "there was no prejudice to the defendant," even though applicable statute of limitations had run at time of substitution).

*Esposito*, at 1276 (finding district court abused its discretion in denying substitution)(Emphasis added). The Tenth Circuit's opinion in *Metropolitan Paving* suggests that even a mistake that should have been patently obvious does not foreclose a later substitution, so long as the plaintiff did not act in bad faith and the defendant has not been prejudiced thereby. *Id.* (Citation omitted). Accordingly, *Esposito* mandates substitution unless Defendants can show Plaintiffs made a deliberate, bad faith, tactical maneuver and Defendants were prejudiced thereby.

### I. PLAINTIFFS DID NOT MAKE A DELIBERATE, BAD FAITH, TACTICAL MANEUVER

*Esposito* provides guidance as to what constitutes a deliberate tactical maneuver. Citing to the Advisory Committee Notes to the 1966 Amendment to Rule 17, the *Esposito* Court provided the following example of an impermissible substitution:

> It does not mean, for example, that, following an airplane crash in which all aboard were killed, an action may be filed in the name of John Doe (a fictitious person), as personal representative of Richard Roe (another fictitious person), in the hope that at a later time the attorney filing the action may substitute the real name of the real personal representative of a real victim, and have the benefit of suspension of the limitation period.... It is, in cases of this sort, intended to insure against forfeiture and injustice—in short, to codify in broad terms the salutary principle of [*Levinson*] and [*Link Aviation*].

*Esposito*, 368 F.3d at 1276. In the example provided, the filing attorney, attempted to use substitution to "have the benefit of suspension of the limitation period." No such tactics can be shown in the instant case. Defendants can point to absolutely no evidence that Plaintiffs acted deliberately or in bad faith.

According to *Esposito*, denial of a motion to substitute is an abuse of discretion unless Plaintiffs' explanation is "**so inexplicable and irrational as to raise the inference that it was not an 'honest' mistake.**" *Id.* (Emphasis added). at 1277. Here, Plaintiffs' explanation is an honest mistake. Plaintiffs always intended their action to be on behalf of the Estate. In fact, when Plaintiffs sent their OGTCA Notice of Claim, **(Ex. 2)**, Plaintiffs listed the "Estate of James Legros, Jr." as a claimant. However, when filing the case, Plaintiffs mistakenly relied upon 12 O.S. § 1054. Title 12, Section 1054 of the Oklahoma Statutes is part of a chapter of Oklahoma statutes entitled "Survival and Abatement of Actions." Title 12 O.S. § 1054 provides:

7

> In all cases where the residence of the party whose death has been caused as set forth in the preceding section of this article is at the time of his death in any other state or territory, or when, being a resident of this state, no personal representative is or has been appointed, the action provided in the said section may be brought by the widow, or where there is no widow, by the next of kin of such deceased.

12 O.S. § 1054. Legros, Jr. was, at the time of his death, a resident of "any other state or territory" and had "no personal representative" appointed. As such, § 1054 authorized certain actions on Legros, Jr.'s behalf to be bought "by the next of kin of such deceased." Mistakenly, believing that § 1054 applied to "survival" actions[1] as indicated in the chapter title, including actions under § 1983, see, *Berry*, supra. (stating § 1983 claims should be a survival action), as well as wrongful death actions, Plaintiffs filed this action "as next of kin" of Legros, Jr.

Because Plaintiffs, who are the beneficiaries of the Estate, have been identified and disclosed to Defendants since day one, Plaintiffs, unlike the Advisory Committee example described in *Esposito*, gained no tactical advantages by filing as "next of kin." Moreover, the causes of action, allegations, defendants and damages sought will all stay the same. This is a purely technical change to properly name the Estate as the real party in interest. *Metro. Paving Co. v. Int'l Union of Operating Engineers*, 439 F.2d 300, 306 (10th Cir. 1971)(allowing substitution where "change is merely formal and in no way alters the known facts and issues on which the action is based."); *Stone v. Estate of Sigman*, 1998 OK CIV APP 173, ¶¶ 18-20, 970 P.2d 1185, 1189, ("When an action is commenced by a party not having the right or capacity to sue, substitution of the proper party is liberally permitted when the cause of action is unchanged and the substituted party bears some relationship to the original party.).

---

[1] Oklahoma's survival statute is 12 O.S. § 1051, and is part of the same title and chapter as the statute (12 O.S. § 1054) relied upon by Plaintiffs.

8

Plaintiffs also alleged a wrongful death claim pursuant to the OGTCA. The Estate appears to be the proper party to bring that claim as well. In *Bard v. Bd. of Cty. Commissioners of Cty. of Oklahoma,* the Honorable Joe Heaton of the Western District of Oklahoma faced similar circumstances. *Bard*, No. CIV-07-422-HE, 2007 WL 9711128 (W.D. Okla. Oct. 9, 2007)**(Exhibit 7)**. In *Bard*, David Bard, filed an action as the spouse of Somar Bakar and father of their minor children, for the death of Bakar, who committed suicide while in custody of the Oklahoma County jail. *Id.* at *1. Like this case Bard asserted claims under § 1983 and state law. *Id.* Defendant filed a motion to dismiss claiming that Bard was not proper "claimant" under the provisions of the OGTCA.[2] *Id.* "[T]he pertinent provision of the [OGTCA] states that in the case of death a notice of claim may only be filed by 'an administrator, special administrator or a personal representative….'" *Id.*, citing 51 Okla. Stat. 152(4)(c), now (152(5)(c)). According to defendant, Bard did not fall within any of the categories listed in § 152 —he is neither the administrator, special administrator nor the personal representative of the decedent's estate. *Id.*

Judge Heaton, relying on the Oklahoma Supreme Court decision in *Calvert v. Tulsa Public Schools*, 932 P.2d 1087 (Okla. 1996) (superceded by statute on other grounds), allowed Bard's claim to proceed. *Bard*, at *2. Relaying the holding in *Calvert*, Judge Heaton's decision writes:

> In *Calvert v. Tulsa Public Schools*, the Oklahoma Supreme Court considered who could be considered a "personal representative" for purposes of the Governmental Tort Claims Act. …The trial court granted summary judgment in favor of the school, finding that only an administrator or personal representative could sue under the Act and that the parents lacked that status until after the applicable limitations period had passed. The Oklahoma Supreme Court reversed.

---

[2] While Defendants in this case filed no motions to dismiss, Plaintiffs now anticipate future motions regarding Plaintiffs' standing to not only sue under § 1983, but also to allege claims under the OGTCA. Substitution is also necessary for this reason, and *Bard* is therefore persuasive and instructive.

> In determining whether the parents were "claimants" under § 152(4)(c) and, thus, entitled to sue the school, the court looked to 58 Okla. Stat § 11 for a definition of the term "personal representative." Because that statute "defines 'personal representative' to include not only persons serving as executors, administrators, conservators, administrators with will annexed and guardians, but also 'persons who perform substantially the same function under the law governing their status,'" the court concluded that "personal representative" includes court-appointed representatives, but also "embraces those persons serving in a similar function under the law as those who were court-appointed." While the court agreed "that court-appointment is the preferable way to proceed in order to be a personal representative," it held "that, in light of the fact that the individuals in question were the parents of the deceased minor and were later appointed as personal representatives, [that was] sufficient to fall within the definition of Section 11."

*Bard*, at *2 (Internal citations omitted)[3]. Like Bard, "[w]hile it would have been preferable for [James Legros, Sr.] to have already obtained official status as the personal representative of the decedent's estate, the court [should find] that his situation is sufficiently similar to that of the parents in Calvert, to allow him to file suit under the Act [and §1983] for [Legros, Jr.'s] death." *Id*.

## II.   DEFENDANTS WILL SUFFER NO PREJUDICE FROM SUBSTITUTION

Defendants will likely claim that substitution causes them undue prejudice, however, it is in the interest of Defendants for these claims to be prosecuted by the appropriate party. *See*, Advisory Committee Notes to the 1966 Amendment to Fed. R. Civ. P 17 ("[T]he modern function of the rule in its negative aspect is simply to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the

---

[3] *Calvert v. Tulsa Pub. Sch., Indep. Sch. Dist. No. 1 of Tulsa Cty.,* 1996 OK 106, 932 P.2d 1087, 1089-90 ("While we agree that court-appointment is the preferable way to proceed in order to be a personal representative, we hold that, in light of the fact that the individuals in question were the parents of the deceased minor and were later appointed as personal representatives, this is sufficient to fall within the definition of Section 11. …Our resolution of the first issue permits the Calverts to continue with their claim, regardless of when they became the court-appointed personal representatives.").

10

judgment will have its proper effect as res judicata."). In *Esposito*, the Tenth Circuit noted that "the typical grounds for prejudice are absent since the [defendant] had actual notice of Mrs. Esposito's claim against it once she filed an administrative tort claim." *Esposito*, 368 F.3d at 1278.

*Esposito* did, on remand, however, allow the trial court to consider one area of potential undue prejudice. In *Esposito*, the deceased was originally the *only* named plaintiff. Mrs. Esposito, the surviving spouse and to-be substituted personal representative, was not a plaintiff *at all* prior to the request for substitution. On this basis, the Court permitted the trial court to consider the prejudicial effect, if any, of adding Mrs. Esposito as a plaintiff late into the litigation. That concern does not exist in the instant case. Unlike *Esposito*, James Legros, Sr. has always been a named plaintiff. See, *Metro. Paving Co.*, 439 F.2d at 306 ("Since it was clear from the outset that the three corporations were the real parties in interest in this matter, there was no prejudice to the defendant in granting the motion to amend. The fact that an applicable statute of limitations may have run before the real parties were substituted is not significant where the change is merely formal and in no way alters the known facts and issues on which the action is based."). The only change Plaintiffs seek is the capacity in which James Legros, Sr. is named.

Defendants claim that request is untimely. However, Defendants cannot show that any delay actually caused the unfair prejudice. While it is true that the deadline to amend has passed, Rule 17 allows Plaintiffs a reasonable time to substitute *after* an objection is made. Fed. R. Civ. P. 17(a). Here, Defendants never filed an objection (i.e., motion to dismiss). Instead, Plaintiffs realized their mistake and Defendants (potential) objection after reading Defendants' settlement

conference statement, produced to Plaintiffs on August 22, 2019. Plaintiffs immediately began the process of correcting this mistake, starting with contacting Defendants' attorney on August 23, 2019 to discuss substitution.

As discussed in Suda v. Weiler Corp., Plaintiffs' motion to substitute is not untimely:

> Weiler first raised the real party in interest issue in its answer filed on November 22, 2006, along with a multitude of other defenses. Because Suda was not automatically expected to file responses to all the other defenses which were raised in the answer, it was reasonable that Suda did not respond specifically to the real party in interest objection before it was raised by motion. Weiler's counsel conducted a deposition of Suda on September 6, 2007, and gathered information about Suda's insurance policy and the settlement with Simplot. Weiler filed the instant motion to dismiss on October 12, 2007, and Suda responded a short time later, on October 26, 2007, seeking substitution of Nodak Mutual. Suda certainly responded within a reasonable time after Weiler filed the motion to dismiss, and the Court finds it would be improper to dismiss Suda's claims based on his failure to act in response to Weiler's answer and the January letter from Weiler's counsel.

*Suda*, 250 F.R.D. 437, 441 (D.N.D. 2008). Here, Plaintiffs acted within a day of realizing their mistake, and filed this motion within a week. Like *Suda*, Plaintiffs response was in compliance with Rule 17.

Regarding the alleged untimeliness of the amendment, the ultimate issue still comes back to whether said untimeliness caused or will cause Defendants undue prejudice. Here, none can be shown. Plaintiffs requested amendment will not change the evidence, causes of action or damages. *Haceesa v. United States*, No. CIV 99-60 LH/RLP-ACE, 2000 WL 36739942, at *2 (D.N.M. Mar. 6, 2000). "The search for truth in this case will not be impaired by loss of evidence because the proposed amendment adds no new claims but will merely *officially* make the Personal Representative a party to this lawsuit…")(**Exhibit 8**). Further, it will not delay any

12

proceedings including the jury trial. As such, leave to amend "shall be freely given when justice so requires." *Id.* citing, Fed. R. Civ. P. 15 (a).

On the other hand, failure to grant Plaintiffs request for amendment will cause great harm to Plaintiffs, including potential "forfeiture of just claims of the statutory beneficiaries, in this instance [Legro's Jr.'s father] and minor daughter." *Id.* Defendants will suffer no undue prejudice by granting the amendment nor will the amendment cause any delay. However, Plaintiffs will suffer prejudice if the Court denies this request. Accordingly, this Court should allow the proposed substitution.

## III.   SUBSTITUTION RELATES BACK TO THE ORIGINAL FILING

Defendants also argue that substitution is futile because it violates the statute of limitations. Presumably, Defendants will argue that because James Legros, Sr. lacked capacity to sue prior the expiration of the statute of limitations, his substitution after the statute of limitations is too late. This argument is not supported by the law.

In *Esposito*, the Tenth Circuit held that substitution related back to the filing of the original lawsuit.

> We do, however, find support in the federal rules for permitting substitution notwithstanding Mr. Esposito's lack of capacity at the time the suit was filed. As the district court pointed out, nothing in Rule 17(a) requires that the original plaintiff have capacity to sue. The fact is, Rule 17(a) does more than merely provide a relation back principle. **It provides that substitution "shall have the *same effect as if* the action had been commenced in the name of the real party in interest."** Fed.R.Civ.P. 17(a) (emphasis added). Rule 17(a) is designed to prevent forfeitures, and as such must be given broad application. *See* Fed.R.Civ.P. 17 advisory committee's notes (1966 Amendment) (stating Rule 17(a) is "intended to insure against forfeiture and injustice" by codifying "in broad terms" prior law permitting substitution notwithstanding running of limitations statute). We conclude that Mr. Esposito's lack of capacity at the time the suit was filed does not prevent the substitution from relating back to the date the suit was filed under Rule 17(a).

13

*Esposito*, 368 F.3d at 1277–78; see also, *Boston Ave. Management, Inc. v. Associated Resources, Inc.*, Okla., 152 P.3d 880 (2007)("[I]ts main thrust is to allow correction in parties after the statute of limitation has run, despite the valid objection that the original action was not brought by the real party in interest.*"); Stone v. Estate of Sigman*, 1998 OK CIV APP 173, ¶¶ 18-20, 970 P.2d 1185, 1189[4], *Ripley v. Childress*, 695 F.Supp. 507, 509 (D.N.M. 1988) ("once a claim has been asserted within the limitation period, the purpose of the statute of limitations has been realized: giving timely notice that litigation arises from a particular transaction or occurrence.").

## **CONCLUSION**

The failure of Plaintiffs to file this action in the name of the Estate was not a deliberate, bad faith, tactical maneuver. Plaintiffs gained no advantage. Further, because the beneficiaries to the Estate have been known to Defendants since the outset and substitution does not change the claims, allegations or damages, there is no undue prejudice to Defendants. Like *Esposito*, supra., it would be a reversible abuse of discretion to deny Plaintiffs request to substitute. For these reasons, Plaintiffs respectfully request leave to file a Second Amended Complaint to name the Estate as the Plaintiff and real party in interest.

---

[4] "The timely filing of an action by the wrong party may be corrected by substitution of the correct party after expiration of the statute of limitations. *Beal v. McCann,* 1995 OK CIV APP 118, 910 P.2d 1099; *see Price v. Estate of Anderson,* 522 S.W.2d 690 (Tex.1975), treating the issue naming the estate, as a correctable misnomer and holding that a timely filing interrupted the statute of limitations. *See also Pitts and Kreidler–Ashcraft Funeral Directors, Inc. v. Ashcraft,* 586 S.W.2d 685, 698 (Tex.Civ.App.1979), wherein the court ruled that naming an estate was a mistake of law that could be corrected."


Respectfully submitted,

LAIRD, HAMMONS, LAIRD, PLLC

s/Chris Hammons
Chris Hammons, OBA # 20233
Jason M. Hicks, OBA# 22176
1332 S.W. 89th Street
Oklahoma City, OK 73159
Telephone:    (405) 703-4567
Facsimile:     (405) 703-4061
E-mail: chris@lhllaw.com
            jason@lhllaw.com
ATTORNEYS FOR PLAINTIFFS

**CERTIFICATE OF MAILING**

I hereby certify that on August 29, 2019, I electronically transmitted the attached document to the Clerk of Court using the Electronic Case Filing System for filing. Based on the records currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to those registered participants of the ECF System.

Stephen L. Geries, OBA #19101
COLLINS, ZORN & WAGNER, P.C.
428 N.E. 50th Street, Second Floor
Oklahoma City, OK 73105
Telephone: (405) 524-2070
Facsimile: (405) 524-2078
Email: slg@czwlaw.com
*Attorney for Defendant*
*Board of County Commissioners*
*For Choctaw County, and*
*Defendants Zach Dillishaw, Stewart Stanfield,*
*Jeffrey Epley and Terry Park in their individual capacity*

Robert S. Lafferrandre
Randall J. Wood
Jessica L. Dark
PIERCE COUCH HENDRICKSON
BAYSINGER & GREEN, LLP
1109 North Francis Avenue
Oklahoma City, Oklahoma 73106
Telephone: (405) 235-1611
Facsimile: (405) 235-2904
Email: jdark@piercecouch.com
*Attorneys for Defendants Smith and Clay*

James L. Gibbs, II
GOOLSBY, PROCTOR, HEEFNER & GIBBS, PC
701 N. Broadway Avenue, Suite 400
Oklahoma City, OK 73102-6006
Telephone: (405) 524-2400
Facsimile: (405) 525-6004
Email: jgibbs@gphglaw.com
*Attorney for Defendant, Edna Casey*

            s/Chris Hammons
            CHRIS HAMMONS